KING, Circuit Judge,
dissenting:
The majority relies on the decision of the Court of Appeals of Maryland in Bausch & Lomb, Inc. v. Utica Mutual Insurance Co., 330 Md. 758, 625 A.2d 1021 (1993), to support its conclusion that environmental contamination for which the government seeks remediation cannot constitute “property damage” triggering the duty to defend under a general commercial liability (“GCL”) insurance policy issued in Maryland. See ante at 483. With all respect for my distinguished colleagues, Bausch & Lomb does not control the result in this case, and I therefore dissent.
The issue is not whether contamination of land, surface water, or groundwater is damage to property (it assuredly is), but whether the contamination damages a third person’s property such that the liability coverage provisions of a GCL policy are implicated. Bausch & Lomb stands for the proposition that when the contamination is confined to the insured’s own property, the remedial directives of state or federal regulators are not sufficient to confer a coexistent property interest upon the government such that it may be considered a damaged third party for the purpose of securing GCL coverage. See 625 A.2d at 1036 (“The State’s interest ... rests on its power to preserve and regulate. That power does not constitute a property interest within the contemplation of the insurance policy in dispute.”).
In Bausch & Lomb, there was no credible indication that the pollution contaminating the insured’s soil and groundwater affected any property other than its own. In one instance, a solvent contaminant identified as TCE had been released into a surface stream that crossed onto adjoining property, but the parties’ experts “agreed that because water tainted by TCE is rapidly cleansed upon exposure to air, the contamination of the stream did not pose a significant threat of further pollution.” 625 A.2d at 1025 n. 4. The owner of the adjoining parcel wrote the insured once, threatening to sue for TCE contamination, but “let the matter drop. Its threat ... never materialized into ... a legitimate claim for damages.” Id. at 1036. Had downstream contamination been confirmed, the insurer “would have been obliged to pay the costs of any direct remediation ... itself.” Id.
Here, by contrast, it is undisputed that the EPA proposed designating the insured’s property as a Superfund site “because it contends that contaminants will be washed from the surface during floods and threaten the Chesapeake Bay.” J.A. 243. A number of years before the EPA’s latest involvement, the property had been the site of a fuel oil release into “a tributary to Back River,” and that release eventually *491 “entered the Waters of the State.” J.A. 59; see ante at 487.
Under the GCL Policy, Penn America is bound to provide coverage for “property damage” inflicted by its insured upon third parties, in the “sums which the insured shall become legally obligated to pay.” J.A. 209. There is no requirement of identity, that is, the damaged third party need not initiate or participate in the process that gives rise to the legal obligation. Even if such a requirement existed, it is surely satisfied whenever the government chooses to act on behalf of a third party as parens patriae, “or as universal trustee for the people.” Ghingher v. Pearson, 165 Md. 273, 168 A. 105, 119 (1933).
Because the EPA has imposed a legal obligation in this case upon Penn America’s insured, Industrial Enterprises, at least in part to remedy property damage suffered (or threatened to be suffered) by third parties, I am convinced that the insured has satisfied the minimal threshold showing that its claim is at least potentially covered by the GCL Policy. See Clendenin Bros. v. U.S. Fire Ins. Co., 390 Md. 449, 889 A.2d 387, 392-93 (2006) (“If there is a possibility, even a remote one, that the plaintiffs claims could be covered by the policy, there is a duty to defend.” (internal citations omitted)). Bauseh & Bomb, distinguishable on its facts, is simply not to the contrary.
The district court never addressed the applicability of Bauseh & Bomb to Penn America’s argument on appeal that the costs of compliance with the EPA’s mandate were not expenditures for “property damage.” The court had a good reason for its inaction: the point was nowhere included within Penn America’s otherwise comprehensive response to the motion for partial summary judgment and supporting memorandum submitted by Industrial Enterprises. Months later, Penn America appeared to have realized the potential import of the decision in Bauseh & Bomb, as it belatedly sought to raise the “property damage” issue through a surreply proposed over objection just eight days prior to the summary judgment hearing.
Although the court denied the surreply, counsel for Penn America could not resist arguing Bauseh & Bomb at hearing, see J.A. 380-95, spurring further objection from her colleague in opposition, see id. at 395-97, 413. The court did not expressly rule on the objection from the bench, but its prior disposition of the proposed surreply and the subsequent omission from its opinion of even the most cursory discussion of the issue admits of no other conclusion than that the objection was consciously and deliberately sustained. The district court’s case management decision is one that we are bound to respect. See In re Trans World Airlines, Inc., 145 F.3d 124, 132-33 (3d Cir.1998) (recognizing that lower court’s waiver ruling reviewed for abuse of discretion). Without evaluating whether the district court here abused its discretion, the majority merely asserts that “Penn America surely preserved the issue for appeal.” Ante at 486.
In any event, because I conclude that Bauseh & Bomb does not govern this particular dispute, I would deny both the appeal and the cross-appeal, affirming the well-crafted rulings of the district court and adopting the sound reasoning set forth in the relevant opinions of my good friend Judge Bennett. See Indus. Enters., Inc. v. Penn Am. Ins. Co., No. 1:07-cv-02239, 2008 WL 4120221 (D.Md. Sept. 2, 2008) (awarding partial summary judgment against insurer on duty to defend); Indus. Enters., Inc. v. Penn Am. Ins. Co., No. 1:07-cv-02239 (D.Md. May 7, 2009) (denying partial summary judgment request of insurer and awarding certain defense costs and attorney fees to insured); Indus. Enters., Inc. v. Penn Am. Ins. Co., No. 1:07- *492 cv-02239 (D.Md. June 12, 2009) (denying, inter alia, $750,000 of insured’s asserted defense costs); Indus. Enters., Inc. v. Penn Am. Ins. Co., No. 1:07-cv-02239, 2009 WL 3647372 (D.Md. Nov. 3, 2009) (denying, inter alia, motions to alter judgment).